Appellant case 14-3858 Maurice Vaughn v. United States of America Oral argument not to exceed 15 minutes per side Lori Marks-Easterman for the appellant Good morning Morning May it please the court, my name is Lori Marks-Easterman I'm a partner of the firm Olshan firm Woloski Counsel for appellant Maurice Vaughn Section 6... Would you like to reserve any time for rebuttal? Yes, your honor, I've reserved 4 minutes Okay, that's fine Thank you Section 6651A1-2 of Title 26 of the U.S. Code Permit the IRS to impose penalties for the failure to file a required tax return or failure to pay, timely pay, the tax amount due The statute provides that these penalties will be waived if the taxpayer can establish that the failure is due to, quote, reasonable cause and not due to willful neglect 30 years ago, in United States v. Boyle The United States Supreme Court reviewed the scope of this statute and what circumstances amount to reasonable cause At issue in Boyle was whether an estate should be assessed tax penalties for filing a late tax return where the lateness was due to a clerical error by the estate's attorney The Supreme Court, stating the need for as, quote, bright line a rule as can be drawn on this issue held that the failure to timely file is not excused by a taxpayer's reliance on an agent The court, however, made clear that because the purpose of the penalty was to ensure the timely filing of tax returns the bright line has exceptions, such as where the taxpayer relies on erroneous advice of the tax advisor or where the taxpayer was incapable of ordinary business care or prudence Neither was at issue in that case, so the court did not have to rule on it but did indicate that these were circumstances that could arise The issue presented here in court today is whether an individual taxpayer who has retained both a financial services advisor and a CPA to assist him and is a victim of a crime by that tax advisor which crime has left the individual without the funds to pay the tax should also pay, in addition to the tax and interest, penalties on top We respectfully submit that if this court concludes that he should then this bright line espoused by Boyle has moved far beyond what the Supreme Court or Congress intended such that there are no circumstances where an individual taxpayer can establish reasonable cause and the statute has become one of strict liability Did your client attempt to get in touch with the accountant who was preparing? He knew who was preparing it Did he in any way follow up to see if the tax return was going to be filed discuss it or did he not? He had had communications with Mr. Krebs, that was the accountant and also with Ms. Marshall who was the financial services advisor Ms. Marshall assured Mr. Vaughn that the taxes were being paid and filed What contact did he have with the person who was actually supposed to be filing the tax return? That is his accountant? Yes, that's correct, your honor What exactly, what contact did he have with him to see whether it was going to be filed properly and so on? The record reflects that Ms. Marshall, the financial services advisor, was working with Mr. Krebs, the accountant and that Ms. Marshall assured Mr. Vaughn So Mr. Vaughn didn't himself follow up with the tax preparer? I don't believe there's evidence of that in the record, your honor And I certainly understand your honor's question and the cases that have reviewed this, I think even leading into Boyle and the IRS regulations specifically reference in determining what's reasonable here did the individual, did the taxpayer follow up with the tax professional and certainly that's all part of what goes into the first prong of what the Valen court indicated There's some regulations on that by the IRS Yes, that's correct that requires diligence on the part of the taxpayer Absolutely, and we submit that Mr. Vaughn complied with that diligence His communications were primarily with Ms. Marshall who had power of attorney over all of his financial affairs He had two bank accounts during the time in question and all of his monies were put into those two accounts Ms. Marshall had a power of attorney and had exclusive payment control over those two accounts For folks that don't live in that world, I can tell you for myself that seems somewhat incredible to give such control to somebody else By way of background, however, Mr. Vaughn is a former professional baseball player I don't know if it's the National American League but he played professional ball for many years and as a professional baseball player, traveled extensively during the preseason, actual season, and postseason and did not have the time or frankly the background and abilities to attend to managing an estate of his nature and so he, like many other professional athletes, relied upon professionals to assist him and that was his practice both during his career and after He had a career-ending injury in 2003 Ms. Marshall had been working for him while at Omni Services a financial services provider in the Ohio area and she left Omni to work exclusively for Mr. Vaughn when he retired in 2004 Counselor, could I ask you, as I understand the standard in attempting to ascertain whether there was this reasonable cause here the taxpayer has to show that he exercised ordinary business care and prudence Is that a fair statement of the requirements? Correct So I understand the taxpayer here is busy with the baseball season for 6-7 months out of the year You seem to suggest that maybe he was not the most sophisticated business person but he would still have time at the end of the season and before the next season began to conduct some oversight as opposed to just simple reliance on a power of attorney and simply trust Ms. Marshall to take care of everything Why wouldn't ordinary business care and prudence require him to do something more than what he did? It sounds like he simply relied on her statements We submit that he did not simply rely upon her She had been managing his financial affairs for years prior without incident In addition, prior to 2006, she and Mr. Krebs had filed the tax returns for him in 2004 and 2005 and she assured him that the tax returns were in order She kept him on a budget such that she paid his bills and frankly up until after 2008 when he decided to shift this professional staff to another set of folks he had no idea of what was going on She was able to conceal this So it wasn't simply that he relegated all to her and then said, I'm done He did what I would submit, somebody who doesn't have the abilities either because they don't have the time or because they don't have the sophistication to manage I believe in the record, Mr. Vaughn earned a very healthy living and did not have the sophistication for what to do with those funds and so respectfully I ask, what more would we ask an individual in his circumstance to do? You might ask him to do what the regulations require which is to follow up with his tax preparer and make sure that his tax return is going to get filed and he didn't do that Well he actually followed up with Ms. Marshall who was working with Mr. Krebs together So they worked together on his It's a pretty difficult thing to enforce the tax laws if someone can simply delegate the whole of his business affairs to someone else and not make sure that on April the 15th or whatever the tax date is that something is being done to file the tax return I mean we all have that, you, I, all of us have that responsibility and we've had a pretty good tax collection system in the United States unlike Greece and Italy and other places and it's based upon imposing the duty which is called a non-delegable duty on the tax payer to follow up and make sure But Mr. Vaughn did, he was told by Ms. Marshall that the returns were being filed and that the taxes were being paid In 2008, the year that the 2007 tax return was to be filed Ms. Marshall embezzled more than $877,000 from Mr. Vaughn And really, Your Honors, respectfully, it's the crime that was committed here by Ms. Marshall that makes this case different and which we submit makes this more like the American Biomaterials case coming out of the Third Circuit from 1992 In that case, a corporation, CEO and CFO embezzled substantial funds from the corporation and the Third Circuit held that the corporation was not responsible for penalties on top of having to pay the taxes because they found that the officers of the company who were charged with the specific task of paying the taxes and ensuring that the tax returns were filed were those that embezzled from the company that the company was disabled That's the second prong of the analysis that was set forth by this court in Valen And we submit that Mr. Vaughn is similar to the corporate tax payer in American Biomaterials and in fact, his situation, frankly, is more sympathetic because he is an individual The corporation in American Biomaterials didn't just have the CFO and CEO It had a board of directors, it had other employees It had other abilities to have a checks and balances system and yet, nonetheless, the Third Circuit was comfortable finding that the corporation was disabled Here you have an individual and I guess we would submit I understand, Judge Merritt, your point about following up but the record shows that he did and I would submit one more point, which is that this is the Supreme Court in Boyle and in particular, the concurring opinion by Justice Brennan made clear that Congress intended in these statutes for this to be a case-by-case analysis to determine whether reasonable care has been taken and while certainly a bright line should be set for situations where the agent is tasked merely with the ministerial obligation to file and has failed to do so here, you're talking about a different situation and this was ruled at a summary judgment level and we would ask that at minimum, Mr. Vaughn should have an opportunity to present his case and demonstrate Thank you, Ms. Marks-Esterman Your initial time has expired You'll have your rebuttal Thank you very much May it please the Court I'm Curtis Pett, representing the United States In order to obtain the benefit of the reasonable cause exception to the delinquency penalties the taxpayer is required to establish both that he exercised reasonable business care and prudence and that he was unable to meet the statutory deadline despite having done so With respect to the first requirement the Supreme Court in Boyle held that the taxpayer is personally responsible for ascertaining and meeting the statutory deadline and that delegation of those duties to an agent does not constitute reasonable cause The taxpayers in Boyle asserted that they repeatedly inquired of their attorney as to the status of the return and that the attorney assured them that he would notify them of the due date and that the return would be filed in plenty of time The Supreme Court rejected that reasonable cause defense and held that delegation of those duties to the agent did not constitute reasonable cause and the taxpayer's expectation and assumption that their agent would satisfy their tax responsibilities did not constitute reasonable cause Mr. Vaughn's argument here is exactly the same as the argument in Boyle He asserts that he delegated all of his financial affairs, including his taxes to Marshall, that she assured him that the taxes would be filed and that he reasonably assumed and expected that she would do so Wouldn't it have been all right under the standard if he had called the tax preparer himself, that is the accountant or whoever had been hired to actually file the tax return to make sure that the return would be filed on time or if not, an extension would be an extension Would that have made it okay then if he had done that? Actually, it is a strict liability rule The overriding black letter principle is that a principal who has a non-delegable duty is responsible for his agent's violation of that duty In this situation, you just simply cannot delegate that to an agent The Supreme Court held that delegation to an agent does not establish reasonable cause even if that delegation can be viewed as a reasonable exercise of business care and prudence So your submission is that even if he had followed up by calling and making sure with his accountant that the return would be filed on time that that still would not have been a sufficient follow-up under the standard That would be a much stronger case but there is case law to that effect that even misrepresentations by the agent would not constitute reasonable cause How would he have, I know he didn't call the tax preparer but if he had and had gotten the same assurances that he got from the financial advisor how should he proceed to protect himself under your theory? How would he proceed to know that in fact he had been lied to by the tax preparer that indeed the returns had not been filed? What should he have done? The only way to make sure would be I guess to sign the return and to have a copy of the return Well you know nowadays you don't have to have the return, you can file it online That is your accountant can file it online Well that would be a closer call, I agree Not now, not then, but now But I just, I agree, there is case law, it is a black, it's just too simple it's a non-delegable duty and in agency law the principal cannot deflect liability by delegating a non-delegable duty to his agent But I agree with you, that would be a much closer call Here basically Mr. Vaughan just washed his hands of the matter and said she'll take care of it, I've got better things to do and he did that, it turned out that that was a bad decision and the courts are also unanimous that in order to exercise reasonable business care and prudence you have to implement some sort of internal controls and here if you're going to turn all your finances over to a third party basic internal controls would be that you would have someone else audit that entity or individual or you have some kind of control to make sure that they were taking matters, handling matters properly Well he had two people here who were supposedly watching his financial interests It sounds like the government is suggesting that maybe the taxpayers need to confirm the filing with the Internal Revenue Service, that you'd have to make some sort of contact with the IRS to ensure that a filing had occurred because assurances from others it seems from the government's perspective would not be enough I would do that, I would have an email or some sort of written confirmation I don't know who at this day and time with the budget of the IRS being cut and the number of returns being audited and so on, I don't know it would take a long time to get in touch with a proper IRS person to let you know whether it had been filed or not Well if you file electronically you get an email saying that it was filed so that's the only way really to 100% protect yourself but again, this case is pretty far from that line anyhow because Mr. Vaughn really didn't implement any sort of internal controls and he didn't, tax time came, there was no evidence that he visited the accountant or anyone or took any affirmative action, he just assumed and expected that it would be taken care of and that turned out to be wrong and that's exactly the situation that the Supreme Court addressed in Boyle and held that that does not constitute a reasonable cause Mr. Vaughn makes the second argument I think and that's that by virtue of the monies that have been embezzled or taken from him by Ms. Marshall he didn't have the money to pay the IRS in 2007 tax return he was I guess disabled or certainly unable to make the payment How does the government respond? Well the inability to pay defense fails on a number of grounds first of all, the lack of funds was not the proximate cause of the delinquency it was Mr. Vaughn's inattention to the matter and secondly, if a taxpayer lacks sufficient funds or would work an undue hardship to pay the tax on time he must file an extension request on or before the due date of course that didn't happen here and thirdly, at his deposition testimony in the malpractice trial against the attorney he testified that he had plenty of money at his disposal to handle the taxes at any given time now in this case he attempts to refute that in his affidavit he says looking at the two bank accounts that Marshall had control of that's where the money that was earmarked for the taxes had been deposited by her embezzling that, the money that had been earmarked for those taxes was no longer there the problem with that is he doesn't assert that he had no other assets stocks, bonds, real estate that could be mortgaged or vehicles that could be refinanced or anything like that so you can't earmark funds in a certain account Approximately how much tax and penalty does he owe according to the IRS now? Well he paid it, it was like $100,000 and he paid it and in this case he's seeking a refund of that when he found out about it he was able to pay it the only reasonable assumption is that he had plenty of money at his disposal and his affidavit is crafted to just point to those two accounts that she embezzled from to say well there wasn't enough money in those accounts and that was the money that was earmarked for the taxes so therefore he doesn't owe anything now that's correct for this year, no he's fully paid that, yes and seeks a refund yes but the inability to pay the law doesn't recognize an act of the fact attempt to show that even if you had tried to pay that you couldn't so that concludes my comments unless the court has any further questions Apparently not, thank you Thank you Mr. Pett Ms. Marks-Esterman you have some rebuttal time Thank you I'm just going to start with the most recent comment which is the amount of the tax the amount of the penalty for 2006 which was paid and thus subject of this proceeding is around $100,000 but the penalty for 2007 which was dismissed from this proceeding because Mr. Vaughn has not yet paid it and thus cannot be subject at this point in this action is north of a million dollars  again also working backwards, counsel for the government that doesn't have anything to do with this case well it does your honor because Mr. Vaughn commenced this action seeking a judgment declaring that the penalties imposed for both 06 and 07 should not properly be charged to him under the statute unfortunately however he can't proceed with this action until he pays the penalty and the government moves to dismiss and we do not oppose Does the record indicate what his net worth is at the time this was occurring or after the fraud by his agent? I don't think so your honor, I believe there is deposition testimony that his income in the prior year had been over some period of time north of $100,000 so certainly he is or was a man of means north of how much? $100,000 I believe Ms. Marshall stole nearly $3,000,000 of that and that's not monies obviously that he has liquid counsel for the government assumes that he has additional accounts which is a pretty successful baseball player he was your honor and unfortunately had a career ended too early and then was a, you know, it's undisputed that he was a victim of a crime the government when we talk about the disability assumes facts which are not in the record and purports to draw inferences against Mr. Vaughn which are wholly improper on summary judgment the assumption for example that he had plenty of money to pay the to pay the tax, not in the record the assumption that he had other assets for which he could do so not in the record Mr. Vaughn submitted a sworn affidavit that he had two bank accounts and that all of his income went into those accounts and that he lacked the funds by virtue of Ms. Marshall's theft at the time the tax was due to pay them but did he indicate the absence of other resources that could be reduced to cash? I don't believe that's in the record and candidly I can't even assess, I can't even answer the court because I was not involved in that stage of the proceeding like you I'm limited to the record I'd like to go back also for the moment to the first prong which is reasonable care and prudence contrary once again to the government's reading into the record Mr. Vaughn did not wash his hands and give it all to a tax professional and say here please fine my tax return and do nothing else he hired Ms. Marshall to run his everyday financial affairs and so this is not a situation where you're like Boyle where you hire a tax accountant and you ask the accountant to please file my tax return and it's a ministerial task of doing so Mr. Vaughn hired as your honor pointed out two separate professionals he hired a financial advisor who was responsible with bill paying services and then he separately hired a CPA who had an obligation to file the returns and if they weren't filed to report that something I guess that hasn't been discussed as of yet which is Judge Merritt you ask about following up with your CPA the CPA has an obligation under his licensing to advise his clients if a return hasn't been filed and in this instance the record shows that Mr. Krebs didn't do that the record also shows doesn't it that Mr. Vaughn brought an action against Mr. Krebs and that matter was resolved in there some sort of a confidential settlement agreement correct and it also shows that he brought an action against Ms. Marshall which was reduced to a judgment which judgment has not been satisfied because Ms. Marshall disappeared to wherever it is that she went along with all the money that she stole from him you'll need to wind down anything further because your red light's on if I just may one I would just like to point out there's a recent case that came out of the Southern District of Ohio the SPECT case where the court cites to the Vaughn decision almost with regret that the Southern District of Ohio situation in that case is you had an estate where the executive of the estate was an elderly woman hired an attorney to run the estate as would typically not typically but frequently happens and unbeknownst to the executor the attorney for the estate was suffering from brain cancer and concealed that fact from the executor and ultimately the returns were not filed in time and the estate was assessed a penalty and the Southern District of Ohio citing to the Vaughn case indicated that they were sorry frankly that they had to impose a penalty here but that that is what this case mandated that they do Okay, thanks Ms. Marks-Esterman We need to move on to some other cases but very much appreciate your argument today Yours Mr. Pett Thank you very much The case will be submitted and you may call the next case